2016-13-84 You've been waiting for that drink. Since bottled water is banned in the courtroom, I was indeed. Thank you, Your Honor, and may it please the Court. In an increasingly long line of decisions, most recently man-machine interface and PPC broadband, this Court has had to remind the Patent, Trial, and Appeals Board that the broadest reasonable construction standard is not the broadest submitted construction standard but requires the claims to be construed reasonably. Reasonably in light of the claim language and reasonably in light of the specification. In this case, the Board again violated those rules. It adopted a broad, actually two different broad and unreasonable constructions that caused the threshold value limitation of the claims in suit to be completely erased from the claims. In turn, this allowed the Board to find that the U.K. Smith reference, which discloses the interruption of a music signal by any telephone call signal of any value, it found that the Smith reference anticipated and contributed to the obviousness of the Skullcandy claims. Under a correct and reasonable interpretation of the claims that reflects what we've called in our briefs the Board's first claim construction, which is to say a certain amount associated with a signal, that is to say distinct from the signal itself, that may trigger an interruption of another signal when that certain amount is attained. Under that construction, the Smith reference does not read on for anticipation or contribute to the obviousness of these claims, all of which contain a separate threshold value limitation that's separate and apart from the presence of the city. Now this case returns to this Court after this Court's remand in an unpublished decision concluding that the Board, which had previously concluded that the Smith reference did not disclose any type of threshold value, had not sufficiently construed the claims. This case was then returned to the Board and the Board issued a decision that had, in the words of our petition for rehearing in front of the Board, not one, not two, but three different claim constructions. And we've set those out in detail in our brief. Here's what those constructions... As you know, Mr. Castanis, we review decisions, not opinions. Right. And so we have to look with reasonable deference at the claims and what is it, page eight of the Smith reference? Right. And to that point, the only construction that was actually applied of the three constructions that were put forth in the opinion was construction number three. And I want to explain to the Court why construction three in particular, but also construction two, which is really of a piece with that one, is incorrect. Let me start, though, by saying why construction number one is the correct one. It is reasonable. In the words of the Board itself, at A5, it is a construction that is based on the claim language and considering the context. That's very critical because those other two don't do that. They don't consider the claim language or the context. Yes, Judge Stoll. So I wanted to ask you, I mean, to a certain extent, that claim construction seems to just repeat back what's in the claim already, to a certain extent. You look then to column two of your specification, which is where threshold value is used in the specification, and it's unclear to me what it's referring to. And so I was hoping that you could tell me what does it mean there because the language there in column two, around line 45, seems to just be saying what the claim says. So in your view, technically, what is the threshold value? Is it a decibel level? What is it? It is a signal level. Remember that this claim limitation is directed actually to a coupling device. It is directed to a particular electronic mechanism that receives signals. And so the antecedent to the threshold value is the second audio signal is characterized by a threshold value. So it is the value of the signal, signal strength, if you will. I don't know that it has to be. Is it to distinguish noise? I'm sorry? Is it to distinguish noise? It certainly could be. I would be reaching beyond what we know in the specification to speculate about that. But, yes, it could distinguish noise. And I think the example I'd give is this patent dates back to a 2003 application. We now have fairly ubiquitous technology that is even in our cars where we may be listening to the radio or to a podcast or something like that, but we receive a phone call, and the phone call usually will interrupt. Sometimes, however, you find yourself having driven to work, and you've got a message on your phone because it didn't interrupt. I don't know why that is. I can't say why that is with my phone, but it does seem to me that it's suggesting that the phone is not reaching the threshold value or the signal is not reaching the threshold value inside that phone to interrupt the signal. But all that the court has in front of it today is the question of reasonableness of the constructions. And ultimately, construction number one, and there isn't a whole lot of magic to the term threshold value, it is a threshold value of the second received signal. It doesn't require a whole lot of elaboration. That's probably why the board in the first instance decided that it didn't need to do too much construction but reached a conclusion based on the complete absence of a threshold value separate and apart from the signal itself in Smith. Now, if I can just walk through the two constructions of the board that were ultimately applied. The second construction came out of a general purpose dictionary, and that construction was a quantity or amount at which a stimulus or signal is strong enough to be perceived. Well, that's going to an individual's perceptions. There might be a sound of decibel level, for example, that meets the threshold for human hearing or doesn't meet the threshold for human hearing but might meet it for a dog's hearing, for example. But that doesn't have anything to do with this specification, with this patent, with this claim, with this invention. The danger of general purpose dictionaries is this case, as this court pointed out in the Phillips decision. It's divorced from the specification. It's divorced from the claim language in a way that construction number one is not. Construction number three was unreasonable for a similar but different reason. That construction, which was a level in which the second audio signal is detectable by a user, again, it's wrong because it's focused on the human user instead of the coupling device, the signal processing and signal receiving arc that we're talking about here in these claims. But moreover, it's based on an understanding of the specification that only the column five embodiment represented the limits of the claim. Well, if I could just unpack that a little bit, the board erroneously relied on language in the Phillips decision, which in turn cited a Supreme Court case that deals with the rare situation where the claims and the embodiments are strictly co-extensive. That's the language of the board's decision. That's the language of Phillips quoting the Supreme Court. The specification makes clear that the embodiments are not co-extensive with the claims. They're not the entire limitation of what is contained within the claims. And there's a reason for that. This specification supports not just this patent, but the 090 patent, which was in suit in the previous appeal, as well as U.S. patent number 8014824, which is continuation in part. Those patents, particularly the 090 continuation patent, which was in suit in the prior case, contains a number of claims, none of which contain threshold value limitation. So there's a reason that this specification and these embodiments are certain in the way they are. And the reason that the threshold value information is in column 2 as generally applicable to all embodiments, not because it needs to fit all of these. And that's, of course, this Court's decisions have made very clear that not every claim has to read on every embodiment, and there's no reason to limit the claims to the column 5 embodiment, which says nothing at all about the threshold value. In fact, the board erroneously thought, Judge Stoll, that there was no mention of threshold value in the specification. And, of course, you pointed out already that column 2 does mention that. In short, Your Honor, the threshold value is distinct from the existence and reception of the signal itself. The constructions 2 and 3 don't make it distinct. It makes those constructions unreasonable. Under the proper construction, construction number 1, there is no evidence, none whatsoever, that the Smith patent anticipates or renders obvious the claims, including the threshold value limitations. Under those circumstances, I think this Court can simply reverse under the correct claim construction since there has been no evidence or argument put forth to the contrary. Unless the Court has further questions for me, I'll return on rebuttal. We will save that time for you, Mr. Stanglis. Mr. Ostro. Thank you, Your Honor. May it please the Court. I think there is a fundamental misunderstanding here between the parties and particularly between counsel and what the board actually said. Their brief, both their principle brief and reply brief, continue to make the argument that every received second audio signal triggers an interruption. And here's the key point. Because any second audio signal that is received will necessarily be strong enough to be perceived or detectable. That's exactly the opposite of what's correct. For example, if I were to ask Mr. Jones in a very quiet voice if I could borrow his stand and whisper over him and ask him that you, this Court, would receive the signal, but you would not perceive it, there is an idea that perception and reception are different. And the point that the board was getting at is that the signal needs to be perceived, not just received. Another example. A hundred years ago or so, Albert Einstein postulated about gravitational waves. We've been receiving them forever, well before we got here. We only perceived these waves, I think last year sometime, a hundred years after he postulated that these things existed. So the notion of perception and reception is the key element that the board was trying to make when it put forth its construction. And I'll read you the construction. How do you respond to the argument that in light of the specification that this is supposed to be a coupling device, that it's not threshold value in terms of something perceived or an audible signal? So I think the point is the one that counsel brought up about his phone being interrupted, and the one Judge Stoll, you brought up about noise, if I understand the question right. The point of this is to distinguish between the underground noise and an actual signal that could be acted on, or an actionable signal that's measurable. I'm not sure I understood completely or answered completely your question. Well, I think I understood counsel to be saying that the specification discloses threshold value that's not just a decibel level, not just hearing something. It's not just a user hearing it. It has to be something that's the coupling device detecting. Right, so an actionable signal above the noise level, right. So first let's be plain. Well, it might not be noise level. Right, let's be plain about this. The specification is incredibly thin, and to your point that it really just repeats what's the claims really just repeat what's in the specification I think is true. My point about the actionable signal is I think counsel mentioned he gets a call in his car sometimes, and sometimes he doesn't get it on, he doesn't hear it ring in the car, it doesn't interrupt the music that's playing, but instead goes straight to voicemail. I think that's a perfect example where the phone, in this case, received a signal, a phone call, but it was not a good enough quality to be perceived, and as a result went straight to voicemail and made a decision. It made a decision that it could not act on this signal, and because it could not act on this signal, it had not met a threshold value.  it did not interrupt the music. The perception level is going to have to be different from the reception level. I think, you know, the notion that a received signal is actionable I think is not true. Very often the received signals are not actionable, and what we're talking about instead is a signal that is good enough to be actionable, and our view is that the way that the PTAB put it, the board put it, they made it clear that the signal has to be detectable or able to be perceived. Those are the words used. This three construction idea, frankly, I think is not true. I think the board came to one construction, which follows the three constructions that council has been putting forth, and we make that point clear in our papers. I can read that to you if the court likes, but our view is that there's got to be a signal that is perceptible and not just received, and it's at that level, the perceptible level where the signal is actionable, and it's at that level that the signal or the call coming on interrupts the music. In fact, that's the entire point of the invention. You don't want the noise to interrupt your music. You want a signal, a phone call that you can actually listen to, and I just thought of this this morning. For example, I live in California, and there are earthquakes in California, and PG&E made me hook up to my gas delivery device a meter that will shut off the gas line at the time when there is a threshold value. In other words, a perceptible earthquake at a particular level. What you don't want to happen is every time there's a little rumbling, your gas will go off. So what you have here is there's got to be some actionable level at which the music will get cut off because the phone call is of good enough quality to be able to be acted upon, not go straight to voicemail. Actually be answerable. Be answerable above the noise level. Be answerable at a level that you can actually use the information that's coming forth from the other side. So that's our view as to why perception and not reception is the key issue here, and those are very different things. There are a couple of issues that are raised in the briefs that counsel did not raise, and unless there's any further questions, I think I will let the court have its time back. All right. No one is ever penalized for giving time back. Thank you, Your Honor. Thank you, Mr. Ostro. Mr. Koutanias? Mr. Koutanias has five-plus minutes. Your Honor, my friend has made an excellent showing to you that a threshold value is something different than a received signal. The problem is that's not the construction that the Board applied. The Board applied a construction that allowed these claims to read on the Smith reference, which does not disclose a, quote, some actionable level. That's my friend's words just now. It is distinct from the receipt of a signal. Let's look at Smith. The Board did say detectable or able to be perceived. The Board used the term perceived in its second construction, what we call the second construction, and detectable in the third construction. Quite frankly, I am a bit at a loss to understand my friend's distinction between receive and perceive. Perceive is a word that refers to a human's perception. It doesn't have anything to do with an electronic instrument. You talk about a signal being received, not perceived, and this claim is drawn strictly to an electronic instrument. It is not drawn to anything that has to do with how a human being perceives the signal. It has everything to do with how the electronics react to the signal. And if you look at the Smith reference, for example, the Smith reference, which really is far afield from the invention that we claim in the Skullcandy patent, the Smith reference is talking about interrupting with any signal, full stop. There is no separate disclosure of a some actionable level that is separate and apart from the signal itself. So if my friend is right that some actionable level is the proper understanding of perceived and received, then we should win. And we should win because Smith doesn't have that in there. So unless the court has any further questions, I'll give the court back my last three and a half minutes. Thank you, Mr. Stanius. We'll take the case under advisement. All rise. The Honorable Court is adjourned until tomorrow morning. It's at o'clock a.m.